UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSEPH GONZALEZ,                                 :

                      Plaintiff,         :
        -against-                                        :        **MEMORANDUM AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,  :        19-CV-5980 (KNF)

                   Defendant.       :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Joseph Gonzalez ("Gonzalez") commenced this action against the Commissioner of Social Security (the "Commissioner"), seeking review of an administrative law judge's ("ALJ") June 14, 2018 decision, finding him ineligible for disability insurance benefits, pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-43, and Supplemental Security Income benefits, pursuant to Title XVI of the SSA, 42 U.S.C. §§ 1381-1385. Before the Court are the parties' motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## ALJ'S DECISION

The ALJ found that Gonzalez: (1) meets the insured status requirements of the SSA through December 31, 2015; (2) has not engaged in substantial gainful activity since March 31, 2010, the alleged disability onset date; (3) "has the following severe impairments: Schizophrenia with schizoaffective disorder, mood disorder, and personality disorder; and asthma"; (4) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: "with regard to environmental limitations, he must avoid more than

1

occasional exposure to respiratory irritants, such as fumes, odors, dust, gases, and extreme cold (refrigerated environments)," and

> in terms of mental limitations, he is restricted to simple and repetitive tasks, in a routine work setting, requiring few changes in work tools and work processes. He cannot interact with the general public; however, he can occasionally interact with co-workers, so long as group or tandem tasks are not required; and he can occasionally interact with supervisors or foremen[;]

(6) is unable to perform any past relevant work; (7) was a younger individual age 18-49, on the alleged disability onset date; and (8) has a limited education and is able to communicate in English. With respect to the severity of Gonzalez's mental impairments, the ALJ considered whether singly or combined they meet or medically equal the "paragraph B" criteria of "Listings 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar and related disorders), and 12.08 (Personality and impulse-control disorders)." The ALJ found that Gonzalez has: (a) mild limitation in understanding, remembering, or applying information; and (b) moderate limitation in interacting with others, concentrating, persisting or maintaining pace and adapting or managing oneself. In assessing Gonzalez's credibility, the ALJ found that "the objective medical evidence of record does not substantially support the claimant's subjective allegations as set forth during the hearing," especially regarding his auditory and visual hallucinations. The ALJ accorded great weight to the June 2016 opinion of consulting examiner, psychologist Ruby Phillips, Ph.D. ("Dr. Phillips") and the June 2016 opinion of a state agency psychological consultant who reviewed the file, L. Blackwell, Ph.D. ("Dr. Blackwell"). The ALJ stated:

> Dr. Phillips, the psychological consultative examiner who saw the claimant in June 2016 opined that his psychiatric problems might significantly interfere with his ability to function on a daily basis, and she concluded that he would have marked limitations to appropriately deal with stress. However, in all other aspects, Dr. Phillips recommended only moderate limitations of function, in terms of following in understanding directions and instructions, performing tasks independently,

2

>maintaining attention and concentration, make appropriate decisions, and relating adequately with others (Exhibit 6F). I give great weight to these restrictions, and have incorporated them into the above residual functional capacity assessment. Dr. Phillips is a duly qualified psychological consultative examiner, who had the opportunity to perform a detailed clinical interview with, and conduct a comprehensive mental status examination of, the claimant. Her conclusions are consistent with her own abnormal clinical examination findings. However, her own findings as described earlier in this decision, show no evidence of abnormal thought processes, no evidence of hallucinations or delusions, and intact attention, concentration, and memory. As such, I do not find that the objective findings or the opinions of Dr. Philips would equate with greater mental limitations in a projected work setting.

The ALJ noted that Dr. Blackwell "well found no more than moderate limitations in the then-applicable 'paragraph B' criteria, and I find it appropriate to carry these conclusions over into the above-listed 'paragraph B' criteria." The ALJ stated that Dr. Phillips's and Dr. Blackwell's opinions support the residual functional capacity determination. The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Gonzalez is not disabled, regardless of transferable job skills and, considering his age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Gonzalez can perform, such as presser, dishwasher and hand packager. The ALJ concluded that Gonzalez has not been under a disability from March 31, 2010, through the date of the decision.

## PLAINTIFF'S CONTENTIONS

Gonzalez asserts that the ALJ's residual functional capacity determination is not supported by substantial evidence because, after affording great weight to the opinion of consulting examiner, psychologist Dr. Phillips, the ALJ failed to reconcile Dr. Phillips's favorably weighted opinion with Gonzalez's residual functional capacity. On June 21, 2016, Dr. Phillips conducted "a psychiatric evaluation," finding that Gonzalez has moderate limitations in

his ability to follow and understand simple directions and instructions, to perform simple tasks independently, to maintain attention and concentration, to learn new tasks, to perform complex tasks independently, make appropriate decisions and relate adequately with others. The ALJ gave great weight to these restrictions and incorporated them in the residual functional capacity assessment. Dr. Phillips also found that Gonzalez has marked limitations in his ability to deal with stress appropriately. However, the ALJ failed to include this limitation in the residual functional capacity finding or provide any explanation for the failure. In October 2015, Gonzalez was screened for behavioral health services related to his fear of leaving the home, depression and suicidal ideation. Gonzalez has difficulty falling asleep and suffers anxiety-related symptoms, including excessive apprehension, nightmares and restlessness. He suffers manic related decreased need for sleep, auditory and visual hallucinations and daily crying. In 2017, Gonzalez's depression worsened to the extent that he was not leaving the house and a team from Lincoln Hospital visited him. Gonzalez was neglecting his hygiene and he tried to hang himself following commands from hallucinatory unknown male voices. Gonzalez asserts that the ALJ's failure to discuss and accommodate his stress is harmful because the ALJ did not account adequately for stress in his hypothetical question to the vocational expert. Although the vocational expert was not asked to consider stress, he opined that a person with the same age, education and past work as Gonzalez, with the ALJ's residual functional capacity, "who were further unable to sustain focus on either simple and repetitive tasks for 20 percent of the workday due to his psychiatric symptoms would be unable to perform any full-time competitive work."

Gonzalez contends that the ALJ who heard his case "was unconstitutionally appointed at the time of the hearing and when he rendered his decision" and "should be barred from further adjudication" of his claim. Thus, the case should be remanded to a different, constitutionally

appointed ALJ, pursuant to Lucia v. S.E.C., __ U.S. __, 138 S. Ct. 2044 (2018), "as this is the only remedy to cure the defect." According to Gonzalez, even if the ALJ has been appointed constitutionally, the matter must be remanded to a different ALJ because, having already determined the merits, the same ALJ "cannot be expected to consider the matter as though he had not adjudicated it before." According to Gonzalez, the instant argument of unconstitutional appointment, raised in this proceeding for the first time, is not subject to an exhaustion requirement, pursuant to Circo v. Comm'r of Soc. Sec., 948 F.3d 148 (3d Cir. 2019).

**DEFENDANT'S CONTENTIONS**

The defendant contends that substantial evidence supports the ALJ's mental residual capacity finding, including Dr. Phillips's opinion that Gonzalez had no or moderate limitations in all areas, except for dealing with stress, a limitation that the ALJ incorporated. The ALJ also relied on Dr. Blackwell's opinion that Gonzalez could perform the full range of unskilled work, as well as: (i) Gonzalez's activities, such as spending his days playing video games, fixing computers, socializing online and walking his dog; (ii) normal examination findings, save for mood and affect; and (iii) the infrequency of reports of hallucinations. The defendant asserts that Gonzalez's argument that the ALJ did not accommodate the marked limitation in dealing with stress is incorrect because, consistent with the definition of the term "marked limitation" as "serious difficulty performing an activity on a regular or continuing basis," the ALJ limited Gonzalez to simple, routine, repetitive work, few changes, no public contact, occasional contact with coworkers without tandem work and occasional contact with supervisors. Thus, the ALJ did not fail to provide an individualized stress analysis and Gonzalez's treatment notes indicate that his primary stressor was family illness and death. According to the defendant, Gonzalez concedes that the ALJ is not required to adopt every aspect of a doctor's opinion and the totality

of the evidence supports the ALJ's residual functional capacity finding.  Moreover, Gonzalez's argument that the ALJ committed a procedural error by not explaining his decision not to credit fully Dr. Phillips's opinion fails because the ALJ accommodated the marked limitation in stress and concluded that any limitations greater than those he incorporated into the residual functional capacity are not supported by Dr. Phillips's largely normal findings.

The defendant contends that Gonzalez's Appointment Clause claim should be rejected because it was never raised before the agency in the administrative proceedings; thus, since the challenge was not jurisdictional, it was forfeited, as several Circuit Courts of Appeal have found, although not the Third Circuit in Circo.  Moreover, the Supreme Court noted in Sims v. Apfel, 530 U.S. 103 (2000), that the question of exhaustion is open, and "[t]he weight of post-*Sims* authority continues to hold that if a claimant fails to raise an issue at any point in the administrative proceedings, it is forfeited for purposes of federal court review."  The defendant maintains that Circo is not a binding precedent in this jurisdiction, and "in the wake of *Lucia*, 54 out of 59 district courts (including this court) have rejected Appointment Clause challenges to SSA ALJ's where the plaintiff failed to raise the issue during the administrative proceedings, although there is a split of authority in 8 of those districts."  Furthermore, the SSA regulations require that a claimant raise all issues, including jurisdictional, to the agency at the earliest possible juncture, and the doctrine of forfeiture serves important efficiency interests, particularly in the context of the SSA in which hundreds of decisions are issued each year.  Remanding "thousands of previously decided claims where the claimant failed to raise any challenge to the ALJ's appointment would further burden an already-stressed system and add many more months to the wait time for first-time claimants."

**PLAINTIFF'S REPLY**

Gonzalez contends that his argument is that the ALJ's residual functional capacity finding is not supported by substantial evidence because, after according great weight to Dr. Phillips's opinion, he failed to reconcile the favorably weighed opinion that Gonzalez is markedly limited in his ability to deal with stress appropriately with his residual functional capacity.  The defendant "attempts to rehabilitate the ALJ's shoddy analysis by contending that 'Plaintiff's treatment notes indicate that his primary stressor was family illness and death,'" and "[d]ealing with this stressor would not be part of work."  However, the ALJ did not: (i) make citation to this evidence as a basis upon which he formulated Gonzalez's residual functional capacity; or (ii) indicate that Gonzalez's "primary stressor was family illness and death, and, as such, he was limiting Plaintiff to 'work with few changes, in recognition of his difficulty adapting.'"  According to Gonzalez, this is not only a mischaracterization of the evidence, "but counsel now seeks to build a bridge between the evidence and the ALJ's [residual functional capacity] that was not proffered by the ALJ."  Since the ALJ failed to explain how he accommodated Gonzalez's marked limited ability to deal appropriately with stress, no meaningful review of the decision is possible, and Gonzalez is entitled to know why the ALJ disregarded that portion of Dr. Phillips's opinion that was beneficial to his application, especially because stress is highly individualized.  Gonzalez asserts that inadequacies in the ALJ's analysis cannot be overlooked solely because Dr. Blackwell assessed greater functionality than the one found by the ALJ.  Thus, the ALJ must explain why he neglected to adopt Dr. Phillip's marked limitations and adopted Dr. Blackwell's opinion of greater functionality, where he accorded both opinions great weight.

Gonzalez asserts "that there are more than enough errors in the ALJ decision to warrant remand on the merits of this case, however, he presents [his] argument [that his Lucia challenge was not waived] in the event that this Court does not agree." Gonzalez contends that, following Lucia, he was not required to raise the Appointment Clause challenge to the ALJ but to the Appeals Council. However, an issue need not be raised before the Appeals Council to preserve it for judicial review. Moreover, the Social Security Administration's regulations did not require Gonzalez to raise the constitutional challenge before the ALJ because that challenge does not affect the merits of the claim for benefits, "it only impacts whether the ALJ can address [his] claim." Although the Circo decision is not binding on this Court, its rationale is compelling. Gonzalez asserts that the defendant's efficiency concerns "are of the Agency's own making, as *Sims* was decided two decades ago" and the agency "could have followed its cue and adopted a regulation requiring issue exhaustion." In any event, efficiency is no reason to abrogate Gonzalez's constitutional rights.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

8

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.
>
> Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

"We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). "The applicant bears the burden of

9

proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

## APPLICATION OF LEGAL STANDARD

*Residual Functional Capacity Determination*

Gonzalez is correct that the ALJ failed to explain why he rejected Dr. Phillips's marked limitation in his ability to deal with stress appropriately, while at the same time giving great weight to Dr. Phillips's opinion. However, the ALJ's reliance on Dr. Phillips's opinion to support his residual functional capacity determination, as it concerns Gonzalez's mental impairments, was an error of law.

In the June 21, 2016 report styled "Psychiatric Evaluation," Dr. Phillips opined that Gonzalez is: (i) moderately limited in his ability to follow and understand simple directions and instructions, to perform simple tasks independently, to maintain attention and concentration, to learn new tasks, to perform complex tasks independently and to make appropriate decisions and to relate adequately with others; and (ii) "markedly limited in his ability to appropriately deal with stress." Dr. Phillips stated that Gonzalez's "[d]ifficulties are caused by cognitive deficits and psychotic symptoms" and diagnosed Gonzalez with schizophrenia. However, Dr. Phillips is a psychologist, not a psychiatrist, and, as such, is not competent to render a "Psychiatrist Evaluation," diagnose mental illnesses or make clinical examination findings reserved for psychiatrists. A psychologist is "[a] nonphysician professional who specializes in the study of human behavior," while a psychiatrist is "[a] physician who specializes in the treatment of mental illness and emotional disorders," and, "[s]ince psychiatrists are physicians, they can diagnose mental disorders, . . . prescribe medication, and use psychotherapeutic techniques to treat patients." *Psychologist and Psychiatrist*, American Medical Association Complete Medical

Encyclopedia (2003).  Moreover, psychiatry is "[t]he branch of medicine that studies, treats, and prevents mental illness," while psychology is "[t]he branch of science that studies the mind, mental and emotional process, and behavior." *Psychiatry and Psychology*, American Medical Association Complete Medical Encyclopedia (2003).  Although a licensed or certified psychologist is an acceptable medical source, only "[l]icensed physicians (medical or osteopathic doctors)," not licensed or certified professionals who are not physicians such as psychologists, can opine on a subject within their respective branches of medicine.  20 C.F.R. §§ 404.1513(a)(1) & (2), 416.913(a)(1) & (2) (Effective Sep. 3, 2013 to March 26, 2017).  Acceptable medical sources include licensed or certified psychologists "for [the] purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning only."  20 C.F.R. §§  404.1513(a)(2), 415.913(a)(2) (Effective Sep. 3, 2013 to March 26, 2017).

      Given that only a psychiatrist, not a psychologist, such as Dr. Phillips, is competent to diagnose and opine about Gonzalez's mental disorders, the ALJ erred in relying on Dr. Phillips's opinion in determining Gonzalez's residual functional capacity.  For the same reasons, the ALJ's reliance on the opinion of Dr. Blackwell, a psychologist, was an error of law.  As a result, the Court finds that the ALJ's residual functional capacity determination is not supported by substantial evidence, warranting remand.  The Court notes that the Social Security Administration relies routinely on "Psychiatric Evaluation[s]" by psychologists, such as Dr. Phillips, including diagnoses and examination findings concerning mental disorders, to support the residual functional capacity assessment.  Such reliance has no basis in and is contrary to the SSA and the agency's regulations.  The Court does not condone now and will not condone this practice in the future.

*Lucia Challenge Waiver and Remand to a Different ALJ*

Since Gonzalez represented in his reply that "he presents [his] argument [that his Lucia challenge was not waived] in the event that this Court does not agree" with his argument that the ALJ's residual functional capacity finding was not supported by substantial evidence, and the Court finds that the ALJ committed an error of law and his residual functional capacity finding is not supported by substantial evidence, warranting remand, the Court need not address the issue of the Lucia challenge waiver.

The defendant did not address Gonzalez's request that the matter be remanded to a different ALJ or his argument that, even if the ALJ was constitutionally appointed, the same ALJ "cannot be expected to consider the matter as though he had not adjudicated it before," relying on Lucia. The Supreme Court stated in Lucia:

> This Court has held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief. *Ryder v. United States,* 515 U.S. 177, 182–183, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995). Lucia made just such a timely challenge: He contested the validity of Judge Elliot's appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court. So what relief follows? This Court has also held that the "appropriate" remedy for an adjudication tainted with an appointments violation is a new "hearing before a properly appointed" official. *Id.,* at 183, 188, 115 S.Ct. 2031. And we add today one thing more. That official cannot be Judge Elliot, even if he has by now received (or receives sometime in the future) a constitutional appointment. Judge Elliot has already both heard Lucia's case and issued an initial decision on the merits. He cannot be expected to consider the matter as though he had not adjudicated it before. To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which Lucia is entitled.

Lucia, 138 S. Ct. at 2055.

However, in a footnote appended to the statement that the ALJ who decided the case in <u>Lucia</u> "cannot be expected to consider the matter as though he had not adjudicated it before," the Supreme Court explained:

> Justice BREYER disagrees with our decision to wrest further proceedings from Judge Elliot, arguing that "[f]or him to preside once again would not violate the structural purposes [of] the Appointments Clause." *Post,* at 2064 (opinion concurring in judgment in part and dissenting in part). But our Appointments Clause remedies are designed not only to advance those purposes directly, but also to create "[ ]incentive[s] to raise Appointments Clause challenges." *Ryder v. United States,* 515 U.S. 177, 183, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995). We best accomplish that goal by providing a successful litigant with a hearing before a new judge. That is especially so because (as Justice BREYER points out) the old judge would have no reason to think he did anything wrong on the merits, see *post,* at 2064 —and so could be expected to reach all the same judgments. But we do not hold that a new officer is required for every Appointments Clause violation. As Justice BREYER suggests, we can give that remedy here because other ALJs (and the Commission) are available to hear this case on remand. See *ibid.* If instead the Appointments Clause problem is with the Commission itself, so that there is no substitute decisionmaker, the rule of necessity would presumably kick in and allow the Commission to do the rehearing.
>
> <u>Id</u>. n.5.

Gonzalez's remand is based on the merits of Gonzalez's disability claim, namely, the Court's finding that the ALJ committed an error of law and the ALJ's residual functional capacity determination is not supported by substantial evidence, not on the merits of Gonzalez's Appointment Clause challenge pursuant to <u>Lucia</u>, which Gonzalez represented in his reply need not be addressed if the Court remands on the merits of his disability claim, as is the case here. Thus, the Appointment Clause remedy to provide a successful challenger with a hearing before a new judge is not available to Gonzalez under the circumstances of this case.

## CONCLUSION

For the foregoing reasons: (1) the plaintiff's motion for judgment on the pleadings, Docket Entry No. 17, is granted and the matter remanded for rehearing; and (2) the defendant's motion for judgment on the pleadings, Docket Entry No. 19, is denied.

Dated: New York, New York  
      July 1, 2020

SO ORDERED:

_Kevin Nathaniel Fox_  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE